## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF THE
CELLULAR TELEPHONE ASSIGNED CALL NUMBER
**(614) 364-1233**

2:23-mj-331

**UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Teresa J. Petit, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, deposes and states:

### INTRODUCTION AND AGENT BACKGROUND

1.    I submit this Affidavit in support of an Application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (614) 364-1233, with listed subscriber unknown but utilized by Charles WOODEN (hereafter referred to as the "TARGET CELL PHONE"), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. HWY 1, North Palm Beach, Florida. The Affiant is also seeking historical subscriber, toll and tower information for the TARGET CELL PHONE covering the entire investigative period. The TARGET CELL PHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.    Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

1

3.     I am a Special Agent employed since May 2014 by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in the Columbus, Ohio Field Office. Beginning in March 2005, I was a Parole Officer with the Ohio Adult Parole Authority (APA), where I served as a Task Force Officer (TFO) with the ATF from early 2009 until May of 2014. During my career, I have investigated violations of Federal and State laws to include firearms and illegal narcotics violations. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision location and cell-site activation information, as well as reviewing call detail information.

4.     I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the ATF and other law enforcement agencies; and from my review of records and reports relating to the investigation. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.     Based on the facts set forth in this Affidavit, there is probable cause to believe that Charles WOODEN, Brittny MCDOUGALD, Carl CAMPBELL,                           Gregory FOUNTAIN, Alexis ORTEGA (hereafter collectively referred to as the "TARGET SUBJECTS"), and others have committed violations of the following federal laws: Title 21, United States Code, Section 841(a)(1), that is, to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance, as well as Title 21 United States Code, Section 846, that is, two or more persons conspiring to commit any offense defined in the subchapter, including Section 841. (Both of the above offenses are collectively referred to throughout as the "SUBJECT OFFENSES.") There is also probable cause to believe that the

2

location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of other individuals who are engaged in the commission of the SUBJECT OFFENSES.

6.      This court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROABLE CAUSE**

7.      On or about June 6, 2022, officers from the Columbus Division of Police (CPD) were dispatched to the area of 5406 Wrigley Street, Canal Winchester, OH. Upon arrival officers located an unconscious and unresponsive female sitting in the driver's seat of a vehicle, located inside the attached garage at 5406 Wrigley Street. Officers conducted a sweep of the structure for any other persons in need of medical aid, and while doing so they observed a "kilo" press, a large bag containing a white powder, a money counter, firearms, and other items indicative of bulk narcotic distribution.

8.      The unconscious female was slumped over the wheel of a Jeep Wrangler Unlimited, bearing Ohio license plate BZJEEP. She was later identified as Brittny MCDOUGALD. Medics with the Columbus Division of Fire (CFD) responded and pronounced MCDOUGALD deceased. The Franklin County Coroner's Office also responded, and the preliminary investigation indicated that MCDOUGALD passed away from a drug overdose. A full postmortem examination was completed by the Franklin County Coroner's Office and the official cause of death was determined to be an accident from an acute fentanyl toxicity.

9.      Continuing on or about June 6, 2022, the initial responding officers from CPD

3

secured the residence and contacted a CPD Narcotics Detective who later received a search warrant for the residence. The execution of the search warrant yielded approximately 78 combined kilograms of cocaine and fentanyl, approximately 25 firearms (several of which had been reported stolen), numerous boxes of ammunition, approximately $155,000 U.S. currency, ledgers, documents bearing various names, two (2) laptop computers, FedEx shipping labels and boxes, twenty-nine (29) cellular telephones, money counters, kilogram presses, and a large box containing marijuana. The Jeep was also towed from the residence to the CPD impound lot where it was secured pending a separate search warrant. As a result of the recovery, investigators began an investigation into the drug trafficking organization involving the TARGET SUBJECTS.

10.     Upon executing a search warrant on the Jeep, investigators recovered two (2) additional cellular telephones, documents, as well as photo identification cards for Brittny MCDOUGALD, Brittny Stewart, and Melissa Abrego. Investigators determined that Stewart was Brittny MCDOUGALD'S maiden name and determined that Melissa Abrego is an alias utilized by Brittny MCDOUGALD. The photo identification card for Melissa Abrego contained a photograph of who investigators know to be Brittny MCDOUGALD.

11.     Investigators reviewed the documents recovered from both the residence located at 5406 Wrigley Street and the vehicle and observed several other names. Investigators observed the name "G. FOUNTAIN" as the recipient listed on numerous FedEx packages in the residence, as well as Melissa Abrego. Additionally, the name "Simone Silas," and Alexis ORTEGA were also documented on several ledgers recovered in the residence.

12.     Rental records were obtained from American Homes 4 Rent that indicated the residence of 5406 Wrigley Street, Canal Winchester, OH 43110, was rented to "Simone Silas"

4

initially on May 8, 2018, with an annual lease renewal thereafter, through May 8, 2023. American Homes 4 Rent also provided the photo identification provided by "Simone Silas" at the time of the lease application. The photo identification card provided by "Simone Silas," contained a photograph of who investigators know to be Brittny MCDOUGALD. The photo identification card was a Texas Driver License that when checked through the Texas database was not a valid identification number issued in the state of Texas. Investigators determined that "Simone Silas" was another alias utilized by Brittny MCDOUGALD.

13. Investigators obtained forensic copies of each of the cellular telephone(s) recovered from MCDOUGALD's Jeep Wrangler. While reviewing the forensic copy of the Apple iPhone, described by MCDOUGALD's family as her personal cellular telephone, investigators identified numerous, lengthy conversations utilizing the WhatsApp platform, between MCDOUGALD and others. Of investigative significance is the WhatsApp conversation between profile name "B" (MCDOUGALD) and "9zeros" with the associated telephone number of (614) 584-7475. Utilizing law enforcement databases, investigators were able to determine that the telephone number associated to "9zeros" belonged to WOODEN. The conversations between MCDOUGALD and WOODEN date back to approximately 2018. WOODEN utilized many different telephone numbers but always the WhatsApp profile name of "9zeros." Over the course of the approximate four (4) years of conversation, WOODEN directed MCDOUGALD where to ship packages, discussed recruiting others to ship and receive packages, talked about cleaning up around the stash house, discussed obtaining supplies, exchanged photographs and videos of bulk currency and suspected narcotics, planned the payment of the bills at the various stash locations, and so forth. Specifically, on May 31, 2022, WOODEN sent MCDOUGALD a message that stated, "I will put NC by the couch but you will need to put them together

5

(6piece)." When investigators executed the search warrant on June 6, 2022, at the residence of 5406 Wrigley Street, there were six (6) kilograms of cocaine located next to the couch, and FedEx labels had been created for an address in North Carolina.

14.     On or about August 10, 2022, investigators obtained a pen register/E-911 ping order on WOODEN's aforementioned telephone number. Analysis of the historical call detail records indicated that WOODEN had never directly contacted McDougald until June 6, 2022, the date McDougald was found deceased. All other communication between McDougald and WOODEN appeared to occur on WhatsApp. The records show that WOODEN attempted four (4) outgoing telephone calls to McDougald exclusively on June 6, 2022.

15.     A subpoena was sent to FedEx Express and FedEx Ground related to the information obtained off the labels located at Wrigley Street. Review of those records indicate hundreds of packages have been sent from the accounts identified. The records show that packages have been sent both to and from California and Ohio as well as but not limited to Texas, Florida, and North Carolina. The names on the labels are variants of the more than eight (8) aliases utilized by the TARGET SUBJECTS. Most commonly the packages were shipped to a Fed Ex Office Print and Ship Center and marked to be held at the location to be picked up by an individual.

16.     On or about January 20, 2022, WOODEN completed an application for an Ohio Driver's License. In column A, the application contains handwritten personal identifying information completed by WOODEN. This includes a block for a telephone number where he provided the number of (614) 584-7475, and a block for an address where he provided the address of 2463 Century Drive, Columbus, OH 43211. An Ohio Driver's License was subsequently issued to WOODEN that day.

17. Investigators are aware that in 2008, WOODEN was charged for Possession and Trafficking in Drugs (F-1), with a Major Drug Offender (MDO) specification. On or about November 8, 2022, in the Franklin County Common Pleas court, WOODEN entered a plea to a lesser included offense of Trafficking in Drugs (F-3) and Possession of Drugs (F-3), without the MDO specification. The court accepted his plea and sentenced WOODEN to five (5) years of community control with a mandatory fine of $10,000. On or about November 30, 2022, the community control was terminated by the court after complete payment of the $10,000 fine.

18. Investigators received records from the Wright-Patt Credit Union that indicated on July 3, 2022, WOODEN completed a loan application for the purchase of a 2022 GMC Sierra 1500 Limited Edition. WOODEN provided the TARGET CELL PHONE on the loan application. WOODEN was approved for the loan amount of $49,172.00 with a $20,000 down payment. The vehicle was later registered to WOODEN through the Ohio Bureau of Motor Vehicles, with license plate JWD6244, at the residence of 2463 Century Drive, Columbus, OH 43211. The loan application also indicated that WOODEN has been an "account manager" at Strongbridge Global LLC located at 620 Taylor Station Drive, Gahanna, OH for five (5) years and six (6) months. According to the Ohio Secretary of State business filings, WOODEN originally filed the Articles of Organization for said business on February 19, 2022.

19. Between the dates of August 16 through September 28, 2022, investigators conducted physical surveillance and observed WOODEN around central Ohio. WOODEN has been observed on a few occasions at Strongbridge Global LLC but was most often observed parked in the driveway at and coming and going from the residence of 27 Langtree Drive, Pickerington, OH. The residence on Langtree appears to be WOODEN's primary residence in contrast to the residence listed on his Ohio Driver's License application. Specifically, on August

23, 2022, investigators followed WOODEN to the FedEx Office Print and Ship Center located at 6266 E. Broad Street, Columbus, OH from said address. WOODEN sat in his vehicle approximately 45 minutes before he entered the retail establishment. You affiant knows through training, education, and experience that individuals engaged in criminal acts will often sit for prolonged periods of time attempting to wait out any surveillance units and/or conducting their own counter surveillance.

20.    Investigators previously received a state pen register/E-911 ping search warrant for the TARGET CELL PHONE. Through technical surveillance, investigators learned that WOODEN has traveled to Cleveland, OH, multiple times throughout September 2022. The technical surveillance placed him around several FedEx Office Print and Ship Centers. Prior conversations between MCDOUGALD and WOODEN indicate that WOODEN travels between his primary residence to the stash house and other locations for the purpose of overseeing the narcotics operation and/or transporting narcotics. For example, on May 31, 2022, WOODEN sent a message to MCDOUGALD stating, "Ok. Everything will be there at 10:30. I will put NC by the couch but you will need to put them together (6piece)." He later sent a message telling her "Everything is there." Further, on June 1, 2022, WOODEN sent MCDOUGALD "We need to schedule a Eye 2 Eye tomorrow. A lot of new stuff to go over." The two exchange several more messages before deciding to meet in person on June 3, 2022. Although WOODEN utilizes numerous telephone numbers it appears from the records obtained through legal process and data obtained from the state pen register/E-911 order, as well as physical surveillance of WOODEN, that the TARGET CELL PHONE continues to be located in and around the area of WOODEN.

21.    On September 2, 2022, investigators conducted a trash pull with the assistance of the local refuse company at 27 Langtree Drive, Pickerington, Ohio, the known residence for

WOODEN. Investigators located an identification card bearing the name of "Donald Littlefield" with a photograph of WOODEN. The identification card was issued from the AimHi Family Firearms Center and was issued on May 2, 2017. Investigators spoke with representatives from AimHi Family Firearms Center and learned, to obtain a Range Certification card, the patron must present another photo identification card. The number that appears above the barcode on the Range Certification card is the corresponding number from the identification provided by the patron. Investigators compared the number series of the I.D. Checking Guide and determined the number series is most like identifications issued by the state of Arizona. With this information, investigators ran a query in NCIC and established that WOODEN obtained an Arizona driver license on October 10, 2013, in the alias name of "Donald Littlefield." After obtaining this information, investigators then reviewed the FedEx shipping records and identified approximately 80 times where packages were shipped to or from "D. Littlefield." The date range for Littlefield's packages is from July 2018 through April 2020. Additionally, there were seven (7) packages between January 2020 and January 2022 that were shipped to Arizona.

22.     Returning to the WhatsApp conversations between WOODEN and MCDOUGALD, on February 25, 2022, he asked her if she was available to look into a "track." Investigators have learned that "track" is a reference to a FedEx tracking number. MCDOUGALD agreed and asked for the tracking number information. WOODEN sent her an image of a FedEx receipt containing the tracking information. WOODEN expressed concern for the package stating, "I used my actual face on this." They continued to exchange messages regarding the package, and he asked her to call FedEx and inquire about the status of the package, he also provided the name for the receiver as                          and the name of the sender as "Donald Littlefield." The records obtained from FedEx Express indicated that other

packages had previously been shipped to Arizona for ▮▮▮▮▮▮▮▮▮▮▮▮

23. More recently investigators obtained records from FedEx Express that indicated that on December 23, 2022, WOODEN shipped a package to ▮▮▮▮▮▮▮▮▮▮ located in Glendale, Arizona. Investigators have identified a pattern from the previously received FedEx records that indicates variations of the first name would be utilized for either the shipper or recipient but often the last name would remain consistent with the actual individual. For example, here the name ▮▮▮▮▮▮▮▮ remained consistent from the prior record to the recent package. Additionally, analysis of the data generated from the pen register/trap and trace on the TARGET CELL phone indicated that WOODEN has contacted the telephone number (602) 881-9416 approximately nine (9) times between the dates of January 13-26, 2023. Utilizing a law enforcement database, the telephone number was further associated to ▮▮▮▮▮▮▮▮▮▮

24. On or about October 6, 2022, investigators obtained a Federal search warrant for a pen register/trap and trace on the TARGET CELL PHONE. Through the utilization of the electronic surveillance data generated it aided investigators with physical surveillance. During that physical surveillance WOODEN was observed circling through parking lots, weaving through residential neighborhoods that resulted in him doubling back on his direction of travel, sitting in his vehicle for extended periods of time prior to exiting the vehicle, and varying his speed when traveling on the highway. Your affiant knows through training and experience that those behaviors are indicative of counter surveillance maneuvers. Those maneuvers as well as others not listed are utilized to detect any type of vehicle following and/or to lose those following surveillance vehicles.

25. Review of the records obtained from a previous pen register on the TARGET CELL PHONE indicated that between September 9 through October 1, 2022, the TARGET CELL

10

PHONE sent or received a data or text message approximately fourteen (14) times to telephone number (614) 738-8587. A query of a law enforcement database indicated that the telephone number is associated to "Donald Littlefield," with the same address that appeared in the Arizona Bureau of Motor Vehicle records on the fake identification obtained by WOODEN. Your affiant knows through training and experience that individuals engaged in illegal narcotic trafficking often utilize multiple cellular telephones.

26.     On or about October 14, 2022, your affiant received a Federal tracking warrant to affix a GPS tracking device to WOODEN's vehicle. Through the electronic data generated from both the GPS tracking device and the pen register/trap and trace, investigators learned that WOODEN has made several trips to Cleveland, OH and Pittsburgh, PA.

27.     On or about November 10, 2022, investigators conducted physical surveillance on WOODEN as he traveled to several locations in Cleveland, OH. Notably, WOODEN entered a FedEx Print and Ship Center located in Willoughby, OH. Investigators spoke with the store manager and reviewed the camera related to WOODEN's activities in the store. WOODEN entered the premises speaking on a cellular telephone. He entered the store holding only what appeared to be a portfolio/notebook and walked into the self-service area of the store. WOODEN did not conduct any business in the store before returning to his vehicle and leaving the parking lot.

28.     Further review of the data generated from the GPS tracker affixed to WOODEN's vehicle and the location data generated from the pen register/trap and trace on TARGET CELLPHONE indicated several locations in Cleveland, OH, that WOODEN has visited on a repeated basis. Investigators have identified thirteen (13) properties located in the greater Cleveland, OH area that were all purchased on or about October 27, 2022. The properties were

11

purchased utilizing the names of CCMW Investments LLC, DAKM Holdings LLC, and WFAM Investments LLC. The location data generated from both the vehicle tracker and the Federal pen register on TARGET CELL PHONE place him at different times on varying days at the locations owned by each of the three aforementioned LLCs.

29.     Investigators received records related to the creation of the aforementioned LLCs and learned two additional LLCs in the names of MFAM Properties and ADM Investments were also created and associated to other LLCs. Records also indicated that in late October 2022 in Cuyahoga County, Ohio, a total of 18 properties were purchased by the grouping of LLCs for a total purchase price of just under $1,000,000.00.

30.     Investigators learned through review of the data generated from the pen register on the TARGET CELL PHONE that on or about December 10-11, 2022, WOODEN traveled to Phoenix, Arizona. Records were subsequently received from four (4) major airlines that indicate the recent trip was the only trip WOODEN has flown during the seven (7) year look back period utilizing his official government name. The records indicate that WOODEN has flown on more than fifty (50) occasions utilizing the alias of LITTLEFIELD. The passenger records include the TARGET CELL PHONE number was provided when booking airline tickets with the LITTLEFIELD alias.

31.     On December 21, 2022, investigators obtained a renewal to the pen register/trap and trace on the TARGET CELL PHONE. Review of the data from the GPS tracker on the WOODEN's vehicle and from the location data obtained from the pen register on the TARGET CELL PHONE indicated that on December 21, 2022, WOODEN traveled to a FedEx Office and Print Center located at 4155 Morse Crossing, Columbus, Ohio 43219. The data indicated he was within the approximate area of the same FedEx at the same time as the GPS tracker data indicated.

12

Your affiant reviewed the video recording generated from a fixed surveillance platform located in the area of 27 Langtree Drive, WOODEN's residence, and observed that WOODEN departed the house wearing dress pants, a button up shirt, with a tie, and a jacket. This observation is significant as the conversations recovered from MCDOUGALD's cellular telephone discuss dressing in business attire when moving suspected narcotics or U.S. currency packages through FedEx. Additionally, the video that was previously recovered of FOUNTAIN retrieving packages at FedEx displays that he is wearing a shirt and tie.

32. Also on December 21, 2022, the data from the GPS tracker on WOODEN's vehicle indicated that he traveled to another FedEx Office and Print Center, this one located at 2576 Brice Rd, Reynoldsburg, OH 43068. The data from the Federal pen register on the TARGET CELL PHONE also indicated that he was in the general area of the same FedEx Office and Print Center within the same time the GPS data indicated. Investigators have learned through the review of other records received from FedEx and the conversation(s) recovered from MCDOUGALD's cellular telephone that it was not uncommon to visit many FedEx Office Print and Ship Centers on the same day to either pick up or drop off packages of suspected narcotics and U.S. currency.

33. On December 23, 2022, the data from the GPS tracker affixed to the SUBJECT VEHICLE again indicated that WOODEN was at the FedEx Office Print and Ship Center located at 2576 Brice Rd, Reynoldsburg, OH 43068. The data from the Federal pen register also indicated that the TARGET CELL PHONE was in the immediate area of the same FedEx Office Print and Ship Center within that same window of time. Your affiant reviewed the video surveillance platform from 27 Langtree Dr, Pickerington, OH, WOODEN's residence, however due to weather conditions and an obstruction it was unclear what type of clothing he was wearing

13

when he departed.

34.     The data collected from a previously authorized search warrant on the TARGET CELL PHONE indicated that WOODEN traveled to Southern California, the source location where the narcotics were previously obtained for the conspiracy. Additional location data from the TARGET CELL PHONE indicated that WOODEN was in the area of a LifeTime Fitness Center while in Southern California. Investigators obtained records that confirmed WOODEN had visited the LifeTime Fitness Center located in Laguna Niguel, CA on January 8 and 9, 2023, utilizing a membership in his own name. Investigators also learned that WOODEN had a prior membership at LifeTime Fitness utilizing the alias of Donald "LITTLEFIELD." The membership records for "LITTLEFIELD" contain a photograph of the individual that investigators know to be WOODEN. The membership in WOODEN's name was created on September 9, 2022, while the last time he utilized the "LITTLEFIELD" membership was on September 2, 2022.

35.     On January 1, 2023, the location data from both the GPS tracker on WOODEN's vehicle and from the TARGET CELL PHONE indicated that WOODEN traveled to Detroit, Michigan and stopped at an address located on Delmar St. Review of the pen register data on the TARGET CELL PHONE has identified two (2) individuals whom WOODEN is communicating with at that location. Prior to the January 1, 2023, trip to Detroit, MI, WOODEN had not communicated utilizing the TARGET CELL PHONE with either individual. WOODEN has maintained constant contact with one of the individuals, since the trip to Detroit, MI. Further, investigators have identified the criminal history for that individual includes a prior Federal conviction for the possession of a firearm by a prohibited person.

36.     On January 18, 2023, investigators observed a vehicle parked at WOODEN's residence on Langtree Drive that is registered to PV Holding, otherwise identified as Avis Rental

14

Cars. Further review of the fixed surveillance platform indicated that WOODEN left the residence operating the rental vehicle on January 19, 2023. WOODEN continued to operate the rental vehicle as his primary transportation until February 7, 2023. Investigators have a GPS tracking device on WOODEN's personal vehicle however, the location data to be provided with this request will continue to aid investigators as WOODEN moves around the country as well as the Central Ohio area when he is operating the rental vehicle.

37. On February 1, 2023, investigators traveled to Cleveland, OH to conduct surveillance on WOODEN. The data generated from the pen register/trap and trace on the TARGET CELL PHONE indicated that WOODEN traveled to Cleveland, OH on January 31, 2023, and was suspected to be located in the area of several hotels in the Beachwood, Ohio area. Investigators located the rental vehicle parked in the parking lot of the Indigo Hotel. Shortly after locating the vehicle, WOODEN was observed exiting the hotel and entering the rental vehicle. WOODEN drove in a manner that was difficult for surveillance units to maintain consistent contact. This included entering the highway, taking the next exit, then entering the highway again doubling back in the original direction, sitting in his vehicle in a parking lot for over 30 minutes, and varying his speed. With the assistance of the location data generated from the pen register/trap and trace on the TARGET CELL PHONE investigators were able to relocate WOODEN on Alcoy Rd, Cleveland, OH. WOODEN also traveled alone to a Home Depot located in Cleveland Heights, OH. After sitting in his vehicle for approximately 30 minutes he entered the store alone. Approximately 30 minutes later he exited the store alone and met with an unknown individual in the parking lot, the unknown individual entered WOODEN's vehicle with him and they departed the parking lot.

38.     Continuing on February 1, 2023, surveillance units observed WOODEN parked on the street in front of 15800 Euclid Avenue, Cleveland, OH. The unknown individual exited and returned to the vehicle a couple times. The two then traveled back to the residence located on Alcoy Rd, Cleveland, OH. Approximately one (1) hour later WOODEN departed Alcoy Rd. and surveillance units attempted to follow him. Again, WOODEN was driving in a manner conducting counter surveillance maneuvers so investigators were unable to maintain surveillance on him. The pen register/trap and trace data on the TARGET CELL PHONE assisted in relocating WOODEN approximately two (2) hours later. Surveillance observed WOODEN return to the Indigo Hotel, enter the location, exit carrying a duffle bag, enter his vehicle and begin travelling south towards Columbus, OH.

39.     Between the dates of February 9 through March 19, 2023, investigators continued to monitor the data generated from the prior authorized pen register/trap and trace on the TARGET CELL PHONE. The location data generated from the authorization continues to aid investigators with travel when WOODEN is outside of the greater Columbus, OH area or traveling in a vehicle other than his personally owned vehicle that has a GPS tracker affixed. Throughout that review period, the location data indicated that WOODEN traveled to Cleveland, OH numerous times; Phoenix, Arizona; Detroit, Michigan; Cincinnati, OH, and Tampa, FL.

40.     Between the approximate dates of February 16-19, 2023, the data indicated that WOODEN traveled to Phoenix, AZ. The call detail records indicated that WOODEN contacted an individual who has previously appeared on the records obtained from FedEx. The records came from the FedEx account that was established by MCDOUGALD and utilized for the suspected bulk narcotic shipments. The telephone number was associated to the individual referred to in paragraphs 22-23 above.

16

41. Between March 5-6, 2023, the data from the TARGET CELL PHONE and the GPS tracker indicated that WOODEN traveled to Detroit, Michigan. The call detail records (CDRs) indicated he communicated with Carl CAMPBELL during that trip. Specifically on March 6, 2023, a location ping with a radius of 52 meters indicated that WOODEN was within the area of Golden Sun Jewelry, located at 23077 Greenfield Rd, Unit 318, Southfield, MI 48075. Previously obtained records indicated that WOODEN had shopped at this jeweler utilizing the alias of LITTLEFIELD. Those records indicated that WOODEN aka LITTLEFIELD had spent more than $55,000 U.S. currency at Golden Sun Jewelry. Additionally, while reviewing the WhatsApp conversation between MCDOUGALD and WOODEN, investigators identified where WOODEN directed MCDOUGALD to that same jeweler to make a purchase.

42. Between the dates of March 24 through April 23, 2023, investigators monitored the data from the previously authorized ping/PRTT on the TARGET CELL PHONE and the data generated from a GPS tracker affixed to WOODEN's vehicle. The data from the TARGET CELL PHONE indicated that during that 30-day period of collection, WOODEN traveled to Cleveland, OH (several times), Detroit, MI, and Las Vegas, NV. Of significant mention during this timeframe, WOODEN was also observed operating another rental vehicle. Investigators learned that WOODEN rented the vehicle on or about April 11, 2023, and maintained possession of that vehicle until May 7, 2023. The data requested from this authorization will continue to aid investigators in the location(s) when WOODEN is away from his residence, not operating his personally owned vehicle, and traveling further then physical surveillance can be conducted by investigators.

43. Additionally, during those 30-days of data collection from the TARGET CELL PHONE, review of the call detail records (CDRs) indicated that WOODEN continued to have

17

contact with the individual discussed in paragraph 35 above, with the second highest frequency. WOODEN also engaged in contact with telephone numbers associated to CAMBPELL and ▮ ▮ (paragraphs 22-23).

44.     On or about May 8, 2023, investigators observed that WOODEN changed rental vehicles. At the time of this Affidavit, WOODEN continues to operate the rental vehicle that he obtained on or before May 8, 2023. As WOODEN continues to operate vehicles in addition to his personally owned vehicle, the location data generated from this requested authorization on the TARGET CELL PHONE, is anticipated to continue aiding investigation of WOODEN's activities.

45.     The location data generated from the TARGET CELL PHONE between approximately May 2, 2023, and the date of this Affidavit, indicated that WOODEN traveled to Detroit, Michigan one date and Cleveland, OH on six separate dates. The location data will continue to aid investigators with identifying assets acquired and expenditures from suspected DTO proceeds. Also, during that time, WOODEN continued to have contact with CAMPBELL. Of interest, all the contacts between WOODEN and CAMPBELL appear to be exclusively voice communications in contrast from other contacts with whom he both exchanges text messages and voice communications.

46.     Through the authorization of this Federal search warrant of the TARGET CELL PHONE, the data will continue to aid in the identification and location of others known and unknown that are involved in the illegal narcotic trafficking, as well as locations where the storage, distribution, and gatherings related to the actions of the illegal narcotics trafficking.

47.     Your Affiant knows through training, experience, and conversations with other law enforcement officers that individuals engaged in a drug conspiracy will use their telephone to communicate with each other. In addition, cellular telephones are commonly in the physical

18

possession of owners which would yield information as to where the conspirators may be meeting, acquiring, transferring, or storing the narcotics. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## E-911 PHASE II DATA AND CELL SITE DATA

48.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector record. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., 120-degree face of the tower) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

49.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the TARGET CELL PHONE, by initiating a signal to determine the location of the TARGET CELL PHONE on AT&T's network or with such other reference points as may be reasonably available.

50. Based on my training and experience, I know that AT&T can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

51. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

52. It is further requested, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize notice to be delayed for a period of thirty days after the termination of the monitoring period authorized by the warrant. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant

authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

53.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

54.     It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

55.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize that investigation.

Teresa J. Petit, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to before me this 31st day of May, 2023


Elizabeth A. Preston Deavers
United States Magistrate Judge

22

## ATTACHMENT A

### The Property to Be Searched

1. The cellular telephone assigned call number (614) 364-1233 with listed subscriber unknown but utilized by Charles WOODEN ("TARGET CELL PHONE"), whose wireless service provider is AT&T, a company headquartered at 11760 U.S. HWY 1, North Palm Beach, Florida.

2. Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of AT&T, including information about the location of the TARGET CELL PHONE if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be Disclosed by the Provider**

All information about the location of the TARGET CELL PHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the TARGET CELL PHONE" includes all available Pen Register/Trap and Trace (PRTT) data, E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Records and Other Information to Be Disclosed

In addition to the above, AT&T is further required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period of **April 23, 2023**, to date of the authorization of this document.

A. The following information about the customers or subscribers of the Account:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long-distance telephone connection records;
4. Length of service (including start date) and types of service utilized;
5. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
6. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
7. Means and source of payment for such service (including any credit card or bank account number) and billing records.
8. Call detail records (CDR's) for the timeframe identified to include all location data.

B. All records and other information (not including the contents of communications) relating to the Account, including:

1. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and
2. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.

### III. Additional Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §§ 841 and 846 involving Charles WOODEN, Brittny MCDOUGALD, Carl CAMPBELL,　　　　　　　Gregory FOUNTAIN, and/or Alexis ORTEGA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.